Curia, per

Wardlaw, J.
The main purposes of the Act of 1846, “to amend the law in relation to sheriffs,” (11 Stat. 368,) seems to have been to extend to a sheriff’s sureties the liability for penalties and to summary proceedings which had before existed as to a sheriff himself, and to substitute in a summary proceeding for a sheriff’s delinquency, a trial by jury according to evidence for a decision had according to the sheriff’s return upon oath. (See 11 Stat. 30; Sheriff’s Act, sec. 20, 21.)
The first section provides that, if any sheriff, not having notice, bona fide, to retain the same, shall, upon demand, &c., wilfully refuse to pay over any sum of money collected for a plaintiff, the sheriff, “ besides being liable as now provided by law, shall be liable to pay the sum withheld and interest thereon, at the rate of five per cent, per month, for the time he may withhold such sum after demand; and, upon recovery had for such default, the sureties of such sheriff shall be liable for the entire amount, as for other neglect of official duty.”
This section provides no new remedy: it prescribes a penalty, or measure of liability, less than that which had before been prescribed for the sheriff himself, (11 Stat. 38: 1839, sec. 63,) and declares the liability of the sureties according to this new measure, whenever, according to it, recovery should be had against the sheriff, under any mode of proceeding: it having been previously decided that the sureties were liable for what *212 the sheriff ought, on demand, to have paid, but not for any penalty incurred by his delinquency. (See Lesley & Calhoun vs. Taggart et al. 2 McMul. 71.)
The second section provides a new and stringent remedy, by notice and suggestion, against both sheriff and sureties: the general scheme of which blends the practice upon a rule against a sheriff with the trial of facts by a jury. It uses the word “ fail,” as well as “ refuse,” and so includes negligence as well as wilful misconduct. It provides for the sheriff’s failure and for his refusal to execute final process, — for his failure and for his refusal to return final process, — and for his failure and for his refusal to “pay over the money, as aforesaid, when demanded, that has come into his hands as sheriff, to the party entitled,” (that is, any sum of money collected~the sum withheld, where he had not notice bona fide, as was mentioned in the first section.) In any of these cases, it allows a suggestion to be made to the Court, “that, with due diligence, “the process” could have been executed,” — (applicable to the cases of ?ion-return and those of now-execution,) — or that “the money (that is, the sum before mentioned,) having been collected, has not been paid over on demand” — (applicable to the cases of non-payment): and it directs “an issue to be made up to try the facts ; and, if it shall be found by the jury trying the issue, that the said final process could have been executed with due diligence, .or that the money having been collected has not been paid over on demand, judgment shall be rendered against the said sheriff and his sureties for the debt, interest and costs, together with five per cent. damages, as above provided:” (that is, five per cent, per month on the sum withheld, as in the first section.) Provided notice to the sheriff and sureties, &c. “ Provided, also, that the provisions of this Act be deemed.cumulative, and not to bar or affect any right of action, or other proceeding, now authorized by law.”
The suggestion under this second section must contain such averments and particulars, that the facts therein set forth having . been found by the jury, judgment may follow, according to the mea *213 sure of liability enacted. So the suggestion in the case before us did. But some of the questions presented here will be made eatier, by a strict attention to what would be the course of proceeding in various other cases.
If, under ajft,, fa. for a large amount, the sheriff has collected a small sum, and failed to pay it over on demand, not having the excuse mentioned in the Act, the suggestion and verdict would be so shaped as to show the plaintiff's right, the sum collected by the sheriff, and his failure to pay, on proper demand: upon which, judgment by order of the Court would be rendered for the debt, interest and costs, together with five per cent, as provided. But what debt? Clearly, in this case, the sum for which, by the first section, the sureties are made liable — the sum collected and withheld, which would be ascertained by the verdict.
If a plaintiff had received payments upon a fi. fa., so that only a balance was left to be collected, and the sheriff, without excuse, has failed to execute the process, when, with due diligence, he might have executed it, the suggestion and verdict would be shaped so as to show the balance, and judgment would be rendered for that with interest and costs, as provided.
And if a fi. fa. is for a large amount, and the sheriff has failed to execute it, when, by due diligence, he could have collected a part, but not all of the amount, — these facts should be ascertained by the proceedings, and judgment be rendered for the sum that might have been collected, with interest and costs. This resolution is not directly required by the case in hand, for here the suggestion and verdict ascertain that the whole amount of the fi. fa. might have been collected, and judgment has been rendered accordingly: but, without settling this point, we cannot fix the meaning of the phrase “execute process,” upon which this case depends.
That the resolution we have attained is required by the Act, will appear from what is manifestly provided where the sum collected and withheld is less than the whole amount of the fi. fa.; and from the constant conjoinder throughout the second *214 section of the case of withholding money collected, and the case of failing to execute process. It surely was not intended to punish more severely the failure to collect a part, when a part only could have been collected, than the failure to pay over a part after it has been collected.
“To execute process,” is to do what the process commands — . to obey its exigency. A fi. fa. commands the sheriff, without delay, to make of the goods, &c. of the defendant in execution a certain sum, and have that sum to be paid to the plaintiff in execution. If it should appear, then, that a sheriff, being commanded to make §1,000 for a plaintiff, could have made §900, but no more, does he escape the provisions of this Act, because it could not with exact truth be said that with due diligence he could have done what was commanded, as his utmost exertion would have fallen short of entire accomplishment? On the other hand, if a sheriff has had a fi. fa. for §10,000, and has made nothing: but it appears that the debtor had some trifling chattel, from which §10 might have been made, are the sheriff and his sureties, upon these facts being ascertained, to be adjudged to pay the whole §10,000, with interest and costs, as provided ? The whole Act, carefully considered, in connection with previous Acts that spoke of “partial execution” and “full execution,” (1839, 11 Stat. 37; 1827, 6 Stat. 324,) leads to the conclusion that in proportion to the extent of effective execution, which, being within the compass of due diligence, the sheriff has failed or refused to do, was intended to be the liability, and that the suggestion and verdict having ascertained this extent, shew the debt for which, with interest and costs, judgment is to be rendered.
The question before us, then, is whether, in this case, the sheriff could, with due diligence, have executed the process. The juiy have found that he could, but their finding was had under instructions which held that the older fi. fa. for §7,000 was an obstacle to the sheriff’s execution of the fi. fa. of the present plaintiffs, but not so great as it appeared to be; for that being founded on a judgment taken to indemnify the plaintiff therein against liabilities anticipated, it constituted a lien on the *215 property of Meetze, the defendant in execution, at any particular time, for only so much as those plaintiffs had a right to require the sheriff then to levy for them, and that this right was measured by such liabilities as in this case might be shewn to the jury. My opinion on the Circuit was, that the sheriff, having failed to levy and sell, as he should have done, was bound, when he held up an older fi. fa., to shew that that fi. fa. prevented his executing the process of the plaintiffs; and that it was for him to meet all objections that might be made to the lien of the fi. fa. he interposed for his excuse. All this was right, but there was error in my supposing that, under a fi. fa. for indemnity, the lien was only commensurate with the loss or liability that could be shewn to have been sustained. The case of Ford vs. Elkin, (2 Spears, 146,) shews that such a fi. fa. has a right to claim the proceeds of a sale according to its date, and the amount upon its face. By proper proceedings had between the parties to such fi. fa., or between the plaintiff in it and other creditors of the defendant, it might be set aside, or reduced to its true amount: but whilst it subsists in full force, unvacated and unreduced, it must claim the notice of the sheriff, and the true rights of the parties to it can neither be adjusted nor inquired into in a contest between third persons.
In this exposition of error on the Circuit, the whole Court concur, but a minority hold it to be immaterial, because they deny that the existence of any older fi. fa. could have served to show that according to the true meaning of the Act of 1846, the sheriff could not, with due diligence, have executed the fi. fa. of the present plaintiffs. Their course of observation is this:— It was the duty of the sheriff to have levied and sold whatever the defendant in execution had, and nothing short of sale should be taken as sufficient evidence that money enough to satisfy all liens might not have been made: — a failure to levy, is a failure to execute a fi. fa., as a failure to arrest would be a failure to execute a ca. sa.; and a sheriff contumaciously refusing to take any step towards the performance of what he is commanded to do, cannot claim excuse from circumstances that, in his opinion, *216 rendered it vain for him to make an attempt: — it was the plaintiffs’s right to have the property sold, perhaps an offer to sell would have induced payment, and we should not permit immunity to a sheriff and undisturbed enjoyment of his property by a debtor, because of old executions, which are often kept open merely for the purpose of hindering just creditors. In all this, there is much force and propriety. No doubt it was the sheriff’s duty to levy and sell; nothing short of the experimentum crucis which a sale affords, should have satisfied him of the insufficiency of the detor’s means. If it was now a question whether the sheriff had done his duty, the evidence might show that he had not; but the question is whether, with due diligence, he could have executed the process of the plaintiffs — that is, have made and paid to them the whole or any part of their money. He was bound to pay the Ji.fa. for $7000 before he could apply any of the proceeds of sale to the fi. fa. of the plaintiffs, and however jealously we should look upon any other evidence, we cannot say that a sale is the only evidence by which the inadequacy of the defendant’s means to do more than pay a prior lien may be established. A ca. sa. requires the body of a defendant to be taken and held for the satisfaction of the plaintiff; no insufficiency of the defendant’s means, nor prior hens at all affect the satisfaction which results from an arrest under it; but a fi. fa. looks to the property, and in determining whether it could be executed, we are obliged to inquire what property the defendant had, what the nature of his interest in any specified article, what the whole would have produced, and what must have been paid before application to the plaintiff’s fi. fa. could have been made. If the sheriff had sold every thing that Meetze owned, and not more than enough to satisfy the older lien had been made, he could at last have only entered the return of nulla bona.on the fi. fa. of these plaintiffs. Now, a failure to return nulla bona does not under this Act subject the sheriff to any penalty, for in every case of failure or refusal to return, as in every case of failure or refusal to execute, the material inquiry directed by the Act is, whether the process could, with due *217 diligence, have been executed: — an observation which confirms our conclusion that the liability under the Act was intended to be, not the same fixed punishment for any and every failure or refusal to execute, but a penalty proportioned to what the sheriff might have done in execution of the process and has failed or refused to. A sheriff could not, without incurring the consequences of a false.return and the guilt of perjury, return nulla bona on a junior ft. fa. when there was property of the defendant unsold, however great might be older liens; but when competent evidence, cautiously received and jealously scrutinized, has satisfied a jury that this return must have been the result of his utmost diligence, he is not subject to the penalties of this Act, whether failure to return or failure to execute, be charged against him in the suggestion. To hold otherwise, would be to hold that a sheriff executes a ft. fa. by returning nulla bona as a lawful excuse for not executing it.
Old writs of ft. fa. lying open in the sheriff’s office are, no doubt, a very frequent cause of hindrance to creditors. By proper proceedings entry of satisfaction pray often be obtained; but without such entry, it is always competent for a junior creditor to show that payments have been made on older executions, and when, in case of a suggestion like this, the lien of an older ft. fa. or mortgage is interposed by the sheriff, such creditor may show that, by reason of payment, or for any other sufficient cause, the lien has been discharged in whole or in part, and that all or some of the money the sheriff might have made, would have gone to this creditor, so that, in fact, his process with due diligence, might, have been executed in whole or in part. But whilst an older ft. fa. remains unvacated and apparently entitled to the whole proceeds that might have resulted from a sale of the defendant’s property, a jury cannot say that notwithstanding it, the sheriff, with due diligence, could have made money for a junior ft. fa. If the sheriff had raised the money and paid it into Court, the plaintiffs, it is said, might have had proceedings under which the older ft. fa. would have been vacated or reduced. The sheriff, it is true, ought to have done as is *218 here suggested; and when the plaintiffs in the case before us shall have had the older fi. fa. vacated or reduced, it may appear, upon suggestion and trial then had, that the sheriff might have executed their process. But now the older fi. fa. stands in the way, and in this proceeding the jury can neither affect its validity nor disregard its lien.
There is no force in the grounds taken by the defendants concerning the decision made at Spring Term, 1849, upon the rule which was served upon the sheriff. That decision was only a refusal to order an attachment upon hearing the return then made by the sheriff. It was no judgment, and only by courtesy could have controlled a Judge at a subsequent Term, if another rule and another return had followed continued failure by the sheriff. But the proceeding under the Act of 1846, by express provision, is made a cumulative remedy, and is no more barred by an ordinary rule against the sheriff than an action on the case would be.
As by the instructions given to the jury, they were required to give less effect to the fi. fa. for $7000 than it should have had, a new trial is ordered.
O’Neall, Evans and Wi-iitner, JJ. concurred.
Withers and Frost, JJ. dissented.

Motion granted.